[Civ. No. 1409. Second Appellate District.—July 3, 1914.]

JOHN T. JOHNSTON et al., Respondents, v. TEJUNGA ROCK COMPANY (a Corporation), Appellant.

BROKERS—SALE OF ROCK—ACTION TO RECOVER COMMISSION—ESTOPPEL AGAINST DEFENDANT AFTER FULL PERFORMANCE.—In an action by brokers against a corporation to recover their commission for making a sale of crushed rock for the corporation, the corporation is estopped, after the transaction has been completely consummated, to defend on the grounds that the brokers were not authorized in writing to make the sale and that the road supervisors who purchased the rock for their county had no authority to represent the county.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, Gray, Barker & Bowen, and William A. Bowen, for Appellant.

Wm. G. Griffith, for Respondents.

CONREY, P. J.—The plaintiffs as partners bring this action against the defendant, a corporation, to recover money claimed as commissions for the sale of personal property. Defendant appeals from the judgment which was rendered in favor of the plaintiffs, and also appeals from an order denying a motion for a new trial.

In the complaint it is alleged that from the nineteenth day of May, 1911, until on or after the first day of September, 1911, the plaintiffs were agents employed by the defendant to sell and contract for the sale of crushed rock for the defendant for an agreed compensation of ten cents per ton; that on September 1, 1911, the plaintiffs as such agents contracted for the sale of and sold on behalf of the defendant to one Deaderick, supervisor of the first supervisor district of the county of Santa Barbara, acting under authority of the board of supervisors of said county, all of the road material, consisting of certain sizes of crushed rock, to be used on five and one-half miles of macadam road thereafter to be built in the Montecito Valley in said district at the price of $1.30 per ton, to be delivered as specified, which contract was in writing and was signed on behalf of said defendant by Ben C. Brock, its superintendent thereunto duly authorized, and by the said Deaderick on behalf of said county; that thereafter, commencing on or about September 9, 1911, the defendant began delivery to said Supervisor Deaderick of said crushed rock under and pursuant to said agreement, and continued such delivery until the road was fully completed; that the total amount of rock so furnished was fifteen thousand eight hundred and ninety tons, and the amount of the agreed compensation of plaintiffs thereof at said rate of ten cents per ton was $1,589. The answer of defendant contains a denial of the employment of plaintiffs and of the agreement for compensation and of the alleged agreement for sale of rock; denies that Ben C. Brock was authorized to execute any such agreement on behalf of the defendant; denies that the defendant delivered any material to said Deaderick under or pursuant to the alleged agreement; and denies that defendant agreed to pay any compensation to plaintiffs, or that any commission is due from defendant to plaintiffs on account of said transaction. The findings of the court on each of the disputed issues are in favor of the plaintiffs, and the defendant contends that the evidence is insufficient to support those findings.

During the year 1911, until about September 15th, one Frank G. Hogan was president and general manager of the Tejunga Rock Company and owned all of the stock, except a few shares which were distributed among four other persons to qualify them for the office of directors of the corporation.

S. M. Crawford was a director and was secretary; Ben C. Brock was a director and was employed as superintendent at the quarry of the company which is located in the county of Los Angeles. The company was active in the business of selling crushed rock and the duties delegated to Brock and Crawford were described in the testimony of Mr. Hogan as follows: "The management, or rather the handling of the orders, was left jointly to Mr. Brock and Mr. Crawford, as my representatives, with instructions that if anything came up of any magnitude at any time that they would consult with me before taking any action, in fact, I was consulted with time after time over the telephone and by repeated visits to the office. I told them to go ahead and make the business pay and to get out rock as cheap as they could, and sell it as high as they could. I never at any time gave to Mr. Brock authority to sell material independent of the approval of Mr. Crawford. The usual course of business in the sale of material called for the approval both of Mr. Crawford and Mr. Brock of all orders. The course of business, with reference to the sale of material prior to September 15, 1911, was, the material was to be gotten out and sold to the best possible advantage by Crawford or Brock. My understanding is, that they were both endeavoring to sell material and were acting in full knowledge of each other and consulting regarding the sales. That was the actual course of business." In May, 1911, and thereafter, the defendant was selling rock in Santa Barbara County, and on and after May 19th the plaintiffs acted as its local agents, engaged for that purpose by the defendant through Brock with the knowledge and consent of Crawford, and at an agreed commission of ten cents per ton on material sold through the agency of the plaintiffs. Sales to various purchasers were made from time to time and settled for on this basis. In August plaintiffs conducted certain negotiations with Supervisor Deaderick, having in view the furnishing of rock for the road work above mentioned. This was known to both Brock and Crawford. On September 1st the plaintiffs prepared in duplicate the document of which a copy is attached to the complaint and brought it to the office of defendant at Los Angeles. There it was signed in duplicate by Brock who mentioned that fact to Crawford, but Crawford did not read the papers. These were taken back

by Johnston to Santa Barbara, and on the next day were delivered by plaintiffs to Deaderick.

No record of the proceedings of the board of supervisors of Santa Barbara County concerning the Montecito road were shown in evidence, but Supervisor Deaderick was permitted to testify without objection thereto, that prior to September 1st the board of supervisors had advertised for bids for the proposed work and received no bids; had then re-advertised for two weeks and on the first Monday in September (September 4th) all bids were rejected, and Deaderick, who was supervisor for the district in which the Montecito road was located, was ordered by the board to proceed and complete that work. Within two or three days after September 4th Deaderick signed the alleged contract in duplicate and returned both copies to the plaintiffs. One of these copies remained in the possession of plaintiffs until the trial of this action. The other copy was delivered by Brock to an officer of the defendant on September 26, 1911. The evidence does not show when it was received by Brock, but does show that Brock's employment by the defendant ceased on or about September 15th, at which time Hogan completed a sale of all the stock of the corporation to new owners who were stockholders of a rival concern known as the Acton Rock Company. On September 15th one W. S. Heaton became vice-president of defendant and was employed as its sales agent. Both prior and subsequent to that time Heaton was sales agent for the Acton Rock Company.

The alleged contract provided that the vendor would furnish at least one hundred and fifty tons per day during the time of construction of the Montecito road. The evidence indicates that this would be approximately three full car loads per day. On September 6th the plaintiffs sent to the defendant an order for the first shipment and accompanied the same by a letter dated the previous day, referring to the same as "our order for the county of Santa Barbara, Miramar Switch; three (3) cars each day, until ordered stopped, beginning shipment at your earliest convenience." The letter then refers to Mr. Deaderick as supervisor in charge and gives further instructions as to the desired course of business respecting the shipments. There were some further orders and shipments made during the next few days. On September 23rd Mr. Heaton went to Santa Barbara in response to a sug-

gestion from A. R. Edmondson, the Santa Barbara agent of the Acton Rock Company who had now been engaged by Heaton as the Santa Barbara agent of both companies. A meeting then occurred at the office of the district attorney at which there were present, among others, Supervisor Deaderick, Edmondson, McComber, Heaton, and District Attorney Squier. Deaderick made some complaint that his orders for rock were not being filled, and Heaton stated: "We are not going to deliver the rock on any contract. We are not delivering you rock on any contract, . . . nor do we propose to pay 10c to McComber and Johnston." The alleged written contract was not produced and Heaton's uncontradicted testimony is that he had no knowledge of such contract at that time, except that Edmondson had told him that he had heard that "somebody had signed up," and that defendant had been paying ten cents per ton to the plaintiffs on rock sold by them. At that interview on September 23rd it was arranged that the defendant would proceed to deliver rock for the Montecito road for seventy cents, f. o. b. at the quarry. This was practically the same as $1.30 at point of delivery, as the current freight rate was sixty cents per ton. Subsequently in December, Deaderick obtained a reduction of five cents per ton on the freight rate of which reduction the county obtained the benefit. Deliveries continued to be made until January, when the road was completed, and the total amount of rock delivered was as charged in the complaint and found by the court. Some of this rock was furnished by the Acton Rock Company from its plant at Acton, forty-three miles from Tejunga, and for some of it of a certain quality an additional price of five cents per ton was paid. The court found, and there is evidence to support the finding, that the rock furnished from Acton was so furnished at the request of the defendant. In view of this fact, there is no doubt of the correctness of the amount of the judgment, if the defendant is liable at all for these commissions.

The plaintiffs have alleged and the court finds that plaintiffs as agents of the defendant contracted for the sale of said road material by a contract in writing, signed on behalf of the defendant by Ben C. Brock, its superintendent. It is contended on behalf of the defendant that this finding is wrong, because Brock had no authority to bind the defendant by the execution of such a contract. Section 2309 of the

Civil Code provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." Under section 1624 subdivision 4 of the Civil Code, the following must be in writing: "An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, unless the buyer accepts or receives part of such goods and chattels or the evidences, or some of them, of such things in action, or pays at the time some part of the purchase money." While no definite amount or total price is mentioned in the writing in question, the magnitude of the work as described and the rate per ton that was to be paid clearly establish that the contemplated price was many times two hundred dollars. The evidence shows that no written authority was ever given by the corporation to Brock or to the plaintiffs authorizing either of them to make sales. Such authority as they had with respect to sales of rock must be derived from the oral instructions given by Hogan to Brock and the oral agreement of agency resulting from conversations between Brock and the plaintiffs, and from the course of business established by the transactions connected with plaintiffs' agency on and after May 19, 1911, and the course of business of the defendant with respect to the transaction of business for it by Brock and Crawford.

It is next contended that the writing in question did not constitute a contract because it was not delivered to the defendant and because the fact that it had been signed by Deaderick was never brought to the knowledge of the defendant until after the above noted transactions of September 23rd. This point is of no importance, unless it be first held that Brock had authority to enter into such contract. If he did have such authority, then we think that the return of the writings by Deaderick to the possession of plaintiffs and the subsequent transactions to which Brock, as representing the defendant, was a party, were such that the writings must be considered as delivered to the defendant at least as soon as the time when the defendant began to deliver orders of material for the Montecito road, which, as we have seen, was prior to September 15th.

It is next contended by appellant that there was no sale, because Supervisor Deaderick had no authority to represent the county of Santa Barbara in purchasing such materials.

We will assume from the record, as shown by the testimony above noted, that the board of supervisors had acted regularly and in accordance with law in its proceedings with reference to the Montecito road down to and including the time when, on September 4th, it rejected bids and ordered that Supervisor Deaderick proceed and complete the work. (Pol. Code, sec. 2643, subd. 11; sec. 2645, subd. 1; sec. 4041, subd. 4.) The road work involved in this case was in a permanent road district, and for this reason the defendant contends that the board of supervisors had no authority except to let the work to the lowest responsible bidder, as provided by sections 2767, 2768 of the Political Code. But considering section 2767 with section 2643 to which it refers, it is reasonably indicated that the board may order such work done by the road commissioner when, after due publication and posting of notices inviting bids, the bids have been rejected for the reasons given in section 2643, subdivision 11.

The evidence in this case shows that Supervisor Deaderick and all other officers of the county of Santa Barbara concerned in the matter at all times considered said writing of September 1, 1911, as a valid contract. The district attorney and the supervisor insisted upon the contract. Changes were made from time to time in the rate of delivery of the rock; and for convenience in arranging for freight payments, the freight charges were paid by the county and seventy cents per ton paid to the defendant. Until the slight reduction in freight rates that was obtained by the county in December, seventy cents per ton plus the freight rate was exactly the same as the $1.30 per ton provided in the contract. Without any objection whatever by Supervisor Deaderick to the terms of the contract, he received the materials and the county paid the consideration therefor. We find in the evidence no sufficient reason for declaring that the purchaser did not act pursuant to the contract, or that the contract was not fully performed. As already noted, it is a fact that at least until as late as September 15, 1911, plaintiffs were the agents of the defendant for the sale of rock in Santa Barbara County at an agreed commission of ten cents per ton; that a purchaser was found by them for rock to be delivered for use in building 5½ miles of Montecito road; that some deliveries of rock were made by the defendant after the writings had been signed by Brock with the knowledge of Crawford and before

plaintiffs had been dismissed from their agency; that Brock and Crawford were the active representatives of the corporation in the transaction of its business under direct authorization from the president and general manager of the corporation, who was also the real owner of the entire business; that on or about September 15th said owner caused the stock to be transferred to other parties who attempted to repudiate the contract as a contract without repudiating the substantial part of the transaction which was delivery of the rock and receiving the price therefor; that the principal advantage which the defendant and its new owners sought to obtain by such repudiation was that they might avoid the payment of this commission; that their representative, Mr. Heaton, had heard of a contract, but did not take the trouble to inquire for it and ascertain its exact terms; that thereupon the plaintiffs within a reasonable time gave notice that they would demand their commission, and at the proper time commenced this action to enforce such demand.

It is true that on September 13, 1911, in a letter to the defendant, the plaintiffs, referring to a statement made to them by Mr. Brock that "two car loads a day to begin would be all this company of men could handle," said, "so please fill the order for the county with 2 cars each day, and only 2 cars until further orders. . . . Please allow this written order to supersede all conversations and writings." But this was nothing more than a request referring to the rate of deliveries. In our opinion, it was not an attempt to cancel the alleged written contract. Such cancellation could not be made by a writing between the principal and agent on one side of a contract, and the subject matter of the letter is not such that it should be construed as superseding the entire contract, if such contract existed.

Under the circumstances above noted, this case should be determined upon the assumption that Superintendent Brock had authority to make the contract which he undertook to make on behalf of the defendant. The defendant accepted the benefits of that contract and performed it; also accepted the benefit of the services of the plaintiffs, who were its agents, with reference thereto. The statements and actions of Mr. Heaton on September 23rd and the defendant's claim that it was not delivering rock under the contract do not neutralize the fact that the defendant proceeded to deliver

the same quantities of rock, and for the same compensation, that had been provided for in that contract. Even if it were conceded that defendant might have refused to deliver the rock, and might have exacted different terms, basing its position upon Brock's lack of authority, yet it is estopped to deny such authority, as against these plaintiffs, who as actual and undenied agents relied upon Brock's due authorization and obtained for defendant the benefits which it has accepted. The same reasoning and the same conclusion apply to defendant's claim that Supervisor Deaderick had no authority to represent the county of Santa Barbara in purchasing rock for the Montecito road. The county recognized his authority by accepting and paying for the rock as delivered by the defendant, and that is sufficient for all purposes of the present case.

Some exceptions to the rulings on evidence are discussed in the briefs of appellant, but, so far as they have importance, they are involved in the foregoing discussion and are determined thereby.

The judgment and order are affirmed.

Shaw, J., and James, J., concurred.